IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD MISTICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-1031 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 10) will be granted, Defendant's Motion for Summary Judgment (ECF No. 12) will be denied, and this case will be remanded for further administrative proceedings.

Richard Mistick ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act").  An Administrative Law Judge ("ALJ") denied benefits to Plaintiff on September 22, 2010, following an administrative hearing.  (R. at 8 – 51).[1]  Subsequently, a request for review by the Appeals Council was denied, and Plaintiff filed the present Complaint in this Court on July 25, 2012.  (R. at 1 – 4; ECF No. 2). Defendant filed an Answer on November 8, 2012.  (ECF No. 5).  Cross motions for summary judgment followed.  (ECF Nos. 10, 12).

---

[1] Citations to ECF Nos. 7 – 7-17, the Record, *hereinafter*, "R. at __."

The ALJ determined that Plaintiff had medically determinable severe impairments, namely, coronary artery disease, obstructive sleep apnea, fibromyalgia, multiple knee surgeries, hypertension and adjustment disorder with emotional features. (R. at 13). However, Plaintiff had the functional capacity to perform light work not involving exposure to hazards, such as unprotected heights and dangerous machinery, not involving any interaction with the general public, not involving more than incidental interaction with co-workers, and limited to simple, routine, repetitive tasks, only incidental independent judgment or discretion and no piece work production-rate pace. (R. at 15). Consistent with the testimony of the vocational expert, the ALJ found that Plaintiff could perform a significant number of jobs existing in the national economy. (R. at 1, 19 – 21).

Plaintiff objects to the decision of the ALJ, arguing that he committed error in failing to accommodate postural limitation findings in physician statements to which significant weight was accorded, in failing to elicit more specific testimony from the vocational expert with respect to those jobs for which Plaintiff may have been eligible, and by rejecting the opinions of two treating physicians in favor of those of two consultative examiners and two state agency evaluators. (ECF Nos. 11 at 7 – 15; 14 at 1 – 5). Defendant counters that the decision of the ALJ was properly supported by substantial evidence, and should be affirmed. (ECF No. 13 at 15 – 24). The Court agrees with Plaintiff, in part.

In order to qualify for SSI, a claimant must prove that he or she is incapable of engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met this requirement. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). Assuming a claimant meets his

or her burden at Steps 1 through 4, Step 5 places a burden upon the Commissioner to show that a particular claimant is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Plaintiff first argues that because the physical capacity assessments of consultative examiner Anna Mathew, M.D., and state agency evaluator V. Rama Kumar, M.D., indicated limitations in Plaintiff's ability to engage in postural movements, and because the ALJ gave these opinions significant weight, his failure to include postural limitations in his residual functional capacity assessment ("RFC") and hypothetical was error. (ECF Nos. 11 at 7 – 9; 14 at 1 – 5). This is considered to be of particular import to Plaintiff, because these postural limitations could have relegated Plaintiff to less than light exertional work, rendering him disabled under 20 C.F.R., Pt. 404, Subpt. P, App'x 2 (the "medical-vocational guidelines"). (ECF Nos. 11 at 7 – 9; 14 at 1 – 5).

Dr. Mathew completed a physical consultative examination of Plaintiff on August 29, 2008. (R. at 337 – 48). Among her findings was the indication that Plaintiff was limited to "occasional" performance of postural activities such as bending, kneeling, stooping, crouching, balancing and climbing. (R. at 347). In his Physical RFC of September 30, 2008, Dr. Kumar similarly found that Plaintiff could only "occasionally" engage in climbing, balancing, stooping, kneeling, crouching and crawling; although, Dr. Kumar equivocally noted that this same finding by Dr. Mathew was not supported by the evidence of record. (R. at 379, 383). The ALJ accorded both doctors' opinions significant weight in his decision, and accommodated their other limitations findings by stating that Plaintiff could only perform light exertional work. (R. at 14 – 16).

The case law in this Circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (3d Cir. 2012). In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Cotter v. Harris*. 642 F. 2d 700, 705 (3d Cir. 1981). The ALJ indicated that Drs. Mathews and Kumar's opinions were entitled to significant weight. To simply omit limitations findings made by these doctors without explanation is a failure on the part of the ALJ. *Fargnoli v. Massanari*, 247 F. 3d 34, 44 (3d Cir. 2001). The ALJ "must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Id.* at 43. This is particularly important – as pointed out by Plaintiff – when the inclusion of said limitations in the ALJ's hypothetical and RFC could have precluded Plaintiff from performing light exertional work, thereby entitling him to disability benefits under the medical-vocational guidelines due to his age. *Stewart v. Sec'y of Health, Educ., and Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983).

Defendant argues that the inclusion of these limitations would not make an appreciable difference to the outcome of the case. S.S.R. 83-14 states that light exertional work "implies that the worker is able to do occasional bending of the stooping type." *Id.* at *4. S.S.R. 85-15 states that, "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." *Id.* at *6. Moreover, when "a person can stoop occasionally[,] . . . the sedentary and light occupational base is virtually intact." *Id.* at 7. "This is also true for crouching." *Id.* Kneeling and crawling are relatively rare activities, and these limitations "would be of little significance in the broad world of work." *Id.*

Yet, when there are more than postural limitations, alone, even light occupations can be eliminated. S.S.R. 85-15 at *6. In light of the potential implications of the ALJ's failure to discuss Plaintiff's postural limitations, the Court cannot find harmless error. Further, the Court cannot conclude that the ALJ's RFC and hypothetical were supported by substantial evidence. Remand for additional discussion – and, potentially, for additional vocational expert testimony – is required.

Plaintiff next claims that the vocational expert testimony elicited by the ALJ was inconsistent with the Dictionary of Occupational Titles ("DOT") and was too vague to constitute substantial evidence. (ECF No. 11 at 11 – 13). Plaintiff claims that it was error for the vocational expert to fail to supply DOT numbers for the jobs for which Plaintiff was allegedly qualified, and that there were many jobs in the employment categories mentioned by the vocational expert that did not accommodate the limitations contained in the ALJ's hypothetical question.

An ALJ is required to inquire of the vocational expert whether his testimony is consistent with the DOT, and if not, to elicit testimony to explain the conflict. *Nahory v. Colvin*, 2013 WL 3943512 at *3 (W.D. Pa. Jul. 30, 2013) (citing S.S.R. 00-4p; *Burns v. Barnhart*, 312 F. 3d 113, 127 (3d Cir. 2002)). In the present case, the vocational expert stated that his testimony was consistent with the DOT, and that the occupational categories listed were just examples. (R. at 49 – 50). There is no case law suggesting that a vocational expert is required to provide DOT numbers in support of his claim of DOT-consistency. *Id.* (citing *Irelan v. Barnhart*, 82 F. App'x 66, 72 (3d Cir. 2003)). Moreover, minor inconsistencies between the vocational expert's testimony and the DOT are not fatal. *Rutherford v. Barnhart*, 399 F. 3d 546, 558 (3d Cir. 2005). Where a vocational expert notes that the occupations listed are just examples of

what a hypothetical person with Plaintiff's limitations could do, and where inconsistencies do not exist as to all the occupations listed by a vocational expert, remand is not required. *Id.* at 557).

Here, Plaintiff has failed to provide this Court with evidence that the exertional and non-exertional requirements of any of the categories of occupations mentioned by the vocational expert at the administrative hearing completely precluded a person with Plaintiff's limitations from obtaining jobs within those categories, let alone a significant number in existence in the national economy. Plaintiff provides no evidence that the vocational expert did not account for the possibility that Plaintiff could not engage in some jobs within the elicited occupational categories when he provided job numbers. Thus, this issue need not be revisited on remand.

Lastly, Plaintiff urges the Court to find error in the ALJ's rejection of the opinions of treating physicians Jatinder Babbar, M.D. and Henry A. Bakkila, M.D. (ECF No. 11 at 13 – 15). Treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)).

However, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler*, 667 F. 3d at 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430

(citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)). The determination of disabled status for purposes of receiving benefits – a decision reserved for the Commissioner only – will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

On August 20, 2010, Dr. Babbar completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (R. at 562 – 64). He noted that Plaintiff had recurrent major depressive disorder, and assigned Plaintiff a global assessment of functioning ("GAF") score of 52. (R. at 564).[2] Dr. Babbar was "unable to determine" whether Plaintiff would be able to work, despite an extensive treatment history. (R. at 564). He opined that Plaintiff experienced sleep disturbance, mood disturbance, emotional lability, anhedonia and difficulty thinking and concentrating. (R. at 564). Plaintiff had "poor" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, maintain attention/concentration, understand, remember, and carry out detailed or complex instructions and demonstrate reliability. (R. at 562 – 63). The assessment did not include a narrative statement or accompanying objective medical findings for support. *See Mason v. Shalala*, 994 F. 2d 1058, 1065 (3d Cir. 1993) (citing *Brewster v. Heckler*, 786 F. 2d 581, 585 (3d Cir. 1986)) (evaluation forms requiring a medical source to simply check a box or fill in a blank are "weak evidence at best," particularly when "unaccompanied by thorough written reports").

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id.*

As noted by the ALJ, Dr. Babbar's treatment notes regularly included findings that Plaintiff had normal thought, normal speech and no abnormal psychomotor activity. (R. at 17, 400 – 07). Mental evaluations at the Mayo Clinic, and with consultative examiner Thomas Eberle, Ph. D., demonstrated that Plaintiff had normal speech, adequate thought content, intact concentration, memory, and attention, and engaged in relevant, coherent conversation. (R at 16 – 18, 293 – 300, 350 – 58). Dr. Eberle assigned Plaintiff a GAF score of 60, and stated that Plaintiff did not have a "psychiatric disorder that would interfere with his ability to function occupationally in multiple jobs." (R. at 354). Plaintiff was alert and oriented, was independent in his activities of daily living, and was cooperative and personable. (R. at 17 – 18, 350 – 58). Intellect, insight and judgment were intact. (R. at 17, 350 – 58). State agency evaluator Phyllis Brentzel, Psy. D., also made similar findings. (R. at 18, 359 – 62). The ALJ noted that Plaintiff also was the primary caregiver for a cognitively delayed son. (R. at 18). For these reasons, the Court finds that the ALJ's discussion of Dr. Babbar's opinion was sufficiently thorough to constitute substantial evidence. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"); *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004) ("[o]verall, the substantial evidence standard is a deferential standard of review").

On September 8, 2010, Dr. Bakkila completed a Medical Statement Regarding Social Security Disability Claim and a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities. (R. at 565 – 68). It was indicated that Plaintiff suffered from pain, fatigue and dizziness as a result of a history of coronary artery disease, fibromyalgia, sleep apnea and basilar artery occlusion. (R. at 565, 568). Plaintiff could stand and walk less

than two hours of an eight hour work day, and sit less than six hours. (R. at 566). Plaintiff's pain was moderate. (R. at 566). He would need rest periods throughout the day, and would need to occasionally elevate his legs. (R. at 566). Plaintiff could never climb, balance, stoop, kneel, crouch or crawl, and had limited reaching, handling and dexterity. (R. at 567). He could not be exposed to poor ventilation, heights, moving machinery, vibration, temperature extremes, chemicals, wetness, dust, noise, fumes, odors, gases or humidity. (R. at 567). He indicated that, as a result of pain, Plaintiff had loss of interest in activities, appetite disturbance, sleep disturbance, decreased energy and difficulty concentrating. (R. at 568). Plaintiff had marked restriction in activities of daily living, social functioning, and concentration, persistence, and pace. (R. at 568). No narrative statement or objective medical evidence accompanied Dr. Bakkila's assessment.

   The ALJ declined to give this assessment significant weight because Dr. Bakkila noted that Plaintiff had not been taking his heart medication when he reported chest pain, shortness of breath and fatigue. (R. at 16). Also, upon examination, consultative examiner Dr. Mathew found that Plaintiff had normal reflexes and muscle tone, no sensory deficits, full range of motion in the extremities, a negative Romberg test, diffuse pain secondary to fibromyalgia, asymptomatic coronary artery disease and the capability to function at a sedentary or light level. (R. at 16, 296, 337 – 48). State agent evaluator Dr. Kumar's assessment likewise was inconsistent with the conclusions of Dr. Bakkila. (R. at 16, 377 – 83). Dr. Bakkila's own treatment notes did not consistently reflect the same degree of limitation, including findings that Plaintiff had "impressive symptom relief" from fibromyalgia. (R. at 227, 232 – 33). Based on this evidence, the Court concludes that the ALJ identified substantial contradictory evidence to justify rejecting the findings of Bakkila.

As indicated above, however, remand is required for the ALJ to explain his omission of postural limitations found by Drs. Mathew and Kumar. If his omission was not supported by substantial evidence within the medical record, he must submit a new hypothetical question to the vocational expert. "On remand, the ALJ shall fully develop the record and explain [his or her] findings . . . to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Comm'r of Soc. Sec.*, 625 F. 3d 798, 800 – 801 (3d Cir. 2010). *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010). Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ. *Id.* at 801 n. 2.

Consistent with the foregoing, the Court hereby enters the following:

## II.  ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 10**) is **GRANTED**, to the extent described herein; Defendant's Motion for Summary Judgment (**Doc. 12**) is **DENIED**; and this case is **REMANDED FORTHWITH** for further administrative proceedings consistent with the instructions above.

IT IS SO ORDERED.

September 18, 2013                                         s\Cathy Bissoon
                                                                         Cathy Bissoon
                                                                         United States District Judge

cc (via ECF email notification):

All Counsel of Record